DeWine, J.
*528 {¶ 1} This appeal presents a challenge to a trial court's decision to join two indictments for trial. Deandre Gordon was indicted first *254 for aggravated robbery and related charges and later for attempting to intimidate a witness in the robbery case. The basis of the intimidation charge was that Gordon had posted video on social media of a statement that the robbery victim had made to the *529 police. The state moved for joinder of the two cases, which the trial court granted. The state also moved to disqualify Gordon's attorney on the basis that he was a material witness in the intimidation case because he had shown Gordon the video of the victim's statement, parts of which were later posted on social media. The court granted that motion too.
{¶ 2} Gordon claims that the trial court's joinder of the two indictments for trial caused the disqualification of his preferred counsel; he argues that had the trial court not joined the cases, his counsel would not have been disqualified from representing Gordon on the charges under the robbery indictment. Although Gordon did not object to the joinder in the trial court, he argues that the joinder prejudiced him and constituted plain error. The court of appeals agreed that the joinder prejudiced Gordon and reversed the convictions under the robbery indictment and ordered a new trial. Because we conclude that the trial court did not commit plain error in joining the two indictments, we reverse the judgment of the court of appeals.
BACKGROUND
Gordon is indicted in the robbery case
{¶ 3} Deandre Gordon robbed Tevaughn Darling of approximately $7,300 in cash, shot him in the foot, and stole his rental car. The two had been friends, and Darling initially lied to police about Gordon's involvement in the crime. According to Darling, he was afraid of the repercussions of reporting Gordon, who was a member of the Loyal Always gang. But eventually Darling reconsidered, identified Gordon as his assailant, and recorded a video statement with a police detective. The Cuyahoga County Grand Jury indicted Gordon for aggravated robbery and related charges ("the robbery case"). Gordon retained Aaron T. Baker as his attorney.
Gordon is indicted in the intimidation case
{¶ 4} As part of discovery in the robbery case, Baker received a DVD from the prosecutor's office of Darling's videotaped statement to police. Baker testified that he copied the video from the DVD to the hard drive of a computer in his office and that he showed the videotaped statement to Gordon, who was free on bond. He further testified that Gordon was the only person to whom he showed the video.
{¶ 5} The day after Gordon saw the video, an edited version of it appeared on the social-media site Instagram. The state alleged that the video had been edited to make it appear that Darling was voluntarily providing information to police about the Loyal Always gang rather than merely reporting what Gordon had done. Darling received multiple threats following the posting of the edited video.
*530 He testified that if people thought he was offering up information to police about a local gang, it could get him killed.
{¶ 6} A few days after the posting of the Instagram video, a frustrated and upset Darling visited the prosecutor's office and "went ballistic," complaining about his videotaped statement having been made public and explaining the possible dangerous implications. As he was leaving, he saw Gordon sitting in a parking lot in a truck with two other men. Gordon called out, "Let me holler at you." Darling responded that he had nothing to talk about. The men in the truck with Gordon yelled to Darling, "Mr. Officer, Mr. Officer" and "You a cop?" Darling testified that he felt threatened by Gordon's actions.
{¶ 7} After those events, the state sought to revoke Gordon's bond. At the revocation hearing, Baker admitted that he had shown the video to Gordon. The court revoked Gordon's existing bond and set a new bond at a much higher amount. Two days later, the grand jury indicted him for intimidation of a crime victim or witness ("the intimidation case"). Gordon retained Baker to also represent him in the intimidation case.
Joinder and disqualification
{¶ 8} Following the second indictment, Baker filed in the robbery case a document titled "Memorandum to the Court Regarding Continuing Representation of the Defendant." He asserted that it would not be an ethical violation for him to continue to represent Gordon in both cases. He argued that he was not a necessary witness and could stipulate that he had shown the video to Gordon and also argued that if the state demanded his testimony, he would be testifying as to an uncontested issue.
{¶ 9} The state filed two motions: one to join the robbery and intimidation cases for trial and the other to disqualify Baker from representing Gordon. In the joinder motion, the state argued that Gordon's actions in the intimidation case were meant to ensure that Darling did not testify in the robbery case. Therefore, the state argued, the two cases met the criteria for joinder because the offenses were connected or constituted parts of a continuing scheme and were part of a course of criminal conduct. The court granted the motion for joinder in a one-sentence entry.
{¶ 10} The motion to disqualify was filed under both case numbers. It urged the court to remove Baker "due to the fact that Mr. Baker is a material witness in" the intimidation case. The state also argued that "the trier of fact will most definitely struggle with separating testimony from argument as provided by Attorney Baker." Baker, acting on Gordon's behalf, filed a response to the motion to disqualify *255 five days after the court granted the state's motion for joinder. Baker made no argument therein that joinder was improper; he argued that he *531 should be able to represent Gordon on all the charges. But the court granted the state's motion for disqualification-again, in a one-sentence entry.
Trial and appeal
{¶ 11} Gordon was represented at trial by Matthew Bangerter, who had filed a notice of appearance as co-counsel in the robbery case before Gordon was charged in the intimidation case. Gordon did not object to the joinder at trial. But before the trial got underway, Bangerter noted a continuing objection to Baker's disqualification. Bangerter also stated that Gordon wanted the trial to go forward and did not "want to wait anymore for trial." The court responded that the time had passed to appeal the disqualification decision:
THE COURT: That's fine. We have talked about this. And you know you had a right to appeal that final appealable order and you missed the appellate window.
MR. BANGERTER: That is correct, your Honor.
THE COURT: So you know that, right, Mr. Gordon?
THE DEFENDANT: Yes.
THE COURT: You had the right to appeal that order, but you waived that right now. So placing an objection on the record has no point, because you waived the right to appeal.
The jury convicted Gordon of all the charges under the robbery indictment but acquitted him of the intimidation charge, and the trial court then imposed the sentence.
{¶ 12} In his appeal to the Eighth District Court of Appeals, Gordon did not raise the trial court's disqualification of Baker as an assignment of error. Instead, he tried to advance the issue by challenging the joinder of the intimidation and robbery cases; Gordon argued that the joinder was error because it led to Gordon's attorney-disqualified as a material witness in the intimidation case-being unable to represent him in the robbery case, denying Gordon his Sixth Amendment right to the counsel of his choice.
{¶ 13} Because Gordon failed to object to the joinder, the court of appeals held that he had waived all but plain error. 2016-Ohio-5407, 2016 WL 4399512, ¶ 18. The court focused its analysis on Crim.R. 14, which requires separate trials if it appears that a criminal defendant would be prejudiced by joinder. A majority of the court concluded that "[b]ased on the unique circumstance of this case," Gordon was prejudiced by the joinder. Id. at ¶ 23.
*532 {¶ 14} The appellate court made a key determination-that Baker was not a material witness in the robbery case. Id. at ¶ 24. The court concluded that absent the joinder, Gordon's original retained counsel, Baker, could have represented Gordon in his robbery case. Therefore, it determined that Gordon was denied the right to counsel guaranteed by the Sixth Amendment to the United States Constitution. The court held, "Once Gordon's originally retained counsel was removed from the robbery case, Gordon sustained prejudice that outweighed the benefits of the joinder. Therefore, we find that the trial court committed plain error by joining the two cases for trial." Id. at ¶ 25. The court declined to address as moot the other assignments of error raised by Gordon, reversed the judgment of the trial court, and remanded the robbery case for a retrial. Id. at ¶ 27-28.
*256 {¶ 15} This court accepted the state's discretionary appeal. 148 Ohio St.3d 1442, 2017-Ohio-1427, 72 N.E.3d 656.
LAW AND ANALYSIS
Gordon failed to appeal the disqualification of counsel
{¶ 16} Although it is not specifically raised by Gordon in his appeal, the issue of the deprivation of a defendant's chosen counsel is in the background of this case. This court, echoing the United States Supreme Court, has held that the erroneous deprivation of a defendant's counsel of choice is structural error. State v. Chambliss , 128 Ohio St.3d 507, 2011-Ohio-1785, 947 N.E.2d 651, ¶ 18, citing United States v. Gonzalez-Lopez , 548 U.S. 140, 150, 126 S.Ct. 2557, 165 L.Ed.2d 409 (2006). But because Gordon failed to appeal the disqualification ruling, the disqualification of Gordon's attorney is not squarely before us. "[A] pretrial ruling removing a criminal defendant's retained counsel of choice is a final order, subject to immediate appeal." Id. at ¶ 27. Gordon did not immediately-or ever-appeal the disqualification determination.
{¶ 17} Instead, Gordon appealed the joinder of the robbery and intimidation cases, arguing that the joinder of the intimidation case with the robbery case prejudiced Gordon by preventing Baker from representing Gordon on the robbery case.
Joinder under Crim.R. 13 and 8(A)
{¶ 18} "The law favors joining multiple criminal offenses in a single trial." State v. Franklin , 62 Ohio St.3d 118, 122, 580 N.E.2d 1 (1991). This is because joint trials "conserve state funds, diminish inconvenience to witnesses and public authorities, and avoid delays in bringing those accused of crime to trial." Bruton v. United States , 391 U.S. 123, 134, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Pursuant to Crim.R. 13, "[t]he court may order two or more indictments or informations or both to be tried together, if the offenses * * * could have been *533 joined in a single indictment or information." Crim.R. 8(A) provides the standards for determining whether separate offenses can be charged in the same indictment:
Two or more offenses may be charged in the same indictment * * * if the offenses charged, whether felonies or misdemeanors or both, are of the same or similar character, or are based on the same act or transaction, or are based on two or more acts or transactions connected together or constituting parts of a common scheme or plan, or are part of a course of criminal conduct.
{¶ 19} Gordon's alleged attempt to intimidate Darling from testifying about the robbery connects the robbery-case charges with the intimidation charge. Also, the robbery case and intimidation case together form a course of criminal conduct. Thus, pursuant to Crim.R. 8(A), the crimes could have been charged in the same indictment. Therefore, the trial court properly joined the two indictments for trial under Crim.R. 13.
Crim.R. 14 requires separate trials when joinder would result in prejudice
{¶ 20} But even if indictments are initially correctly joined under Crim.R. 8(A) and 13, a trial court should order separate trials pursuant to Crim.R. 14 if it appears the defendant is prejudiced by the joinder. Crim.R. 14 states:
*257 If it appears that a defendant or the state is prejudiced by a joinder of offenses * * * in an indictment, information, or complaint, or by such joinder for trial together of indictments, informations or complaints, the court shall order an election or separate trial of counts * * * or provide such other relief as justice requires.
{¶ 21} It is the defendant's burden to demonstrate that joinder is prejudicial:
A defendant claiming error in the trial court's refusal to allow separate trials of multiple charges under Crim.R. 14 has the burden of affirmatively showing that his rights were prejudiced; he must furnish the trial court with sufficient information so that it can weigh the considerations favoring joinder against the defendant's right to a fair trial, and he must demonstrate that the court abused its discretion in refusing to separate the charges for trial.
*534 State v. Torres , 66 Ohio St.2d 340, 421 N.E.2d 1288 (1981), syllabus. Here, Gordon never objected to the joinder and did not seek severance pursuant to Crim.R. 14 even after the court made its ruling disqualifying Baker. He asserted error only in his appeal.
Plain-error review is appropriate in this case
{¶ 22} Since Gordon neither sought severance pursuant to Crim.R. 14 nor objected to the joinder, we do not review the trial court's decision for an abuse of discretion; instead, as the appellate court correctly determined, on appeal we apply a plain-error standard of review to the trial court's decision regarding joinder.
{¶ 23} "Notice of plain error * * * is to be taken with the utmost caution, under exceptional circumstances and only to prevent a manifest miscarriage of justice." State v. Long , 53 Ohio St.2d 91, 372 N.E.2d 804 (1978), paragraph three of the syllabus. To successfully assert that a trial court committed plain error, a defendant must show an error that constitutes an obvious defect in the trial proceedings and demonstrate that the error affected the outcome of the trial. State v. Rogers , 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, ¶ 22.
There was no plain error
{¶ 24} The appellate court based its finding of error on the prejudice to Gordon that it determined resulted from the joinder of the two cases. It held that "[o]nce Gordon's originally retained counsel was removed from the robbery case, Gordon sustained prejudice that outweighed the benefits of the joinder." 2016-Ohio-5407, 2016 WL 4399512, at ¶ 25.
{¶ 25} The appellate court's finding of prejudice appears to be based upon its conclusion that Gordon had been improperly denied counsel of his choice in the robbery case. Gordon urges us to uphold this prejudice finding based upon the premise that the erroneous deprivation of the right to counsel was structural error, which requires no showing of actual prejudice. See Chambliss , 128 Ohio St.3d 507, 2011-Ohio-1785, 947 N.E.2d 651, at ¶ 18.
{¶ 26} But the issue that had been appealed and that was actually before the appellate court was not that the disqualification of counsel was error but went to whether improper joinder amounted to prejudice. And to succeed on this claim, Gordon had to meet the second part of the plain-error analysis: that the error in joining the offenses affected the outcome of *258 the trial. The appellate court did not consider whether the error affected the outcome; it simply presumed prejudice without undertaking the required analysis. This court, however, has "rejected the notion that there is any category of forfeited error that is not subject to the plain error rule's requirement of prejudicial effect on the outcome." *535 Rogers , 143 Ohio St.3d 385, 2015-Ohio-2459, 38 N.E.3d 860, at ¶ 24, citing State v. Perry , 101 Ohio St.3d 118, 2004-Ohio-297, 802 N.E.2d 643, ¶ 23.
{¶ 27} But we need not reach this issue of whether improper joinder affected the outcome of the trial and was thus prejudicial, because the trial court did not err in joining the two offenses.
{¶ 28} If Baker was a material witness in both the robbery and intimidation cases, there was no prejudice in trying the cases together. A material witness is "[a] witness who can testify about matters having some logical connection with the consequential facts, esp. if few others, if any, know about those matters." Black's Law Dictionary 1839 (10th Ed.2014). The great leap taken by the appellate court, without any analysis, is that although Baker was a material witness in the intimidation case, he "was not a material witness [in] the robbery case." 2016-Ohio-5407, 2016 WL 4399512, at ¶ 24. The appellate court did not consider that Gordon's alleged attempts at intimidation of Darling would have been admissible in the robbery case-"[e]vidence of conduct designed to impede or prevent a witness from testifying is admissible to show consciousness of guilt." State v. Conway , 109 Ohio St.3d 412, 2006-Ohio-2815, 848 N.E.2d 810, ¶ 68. The posting of Darling's police interview on Instagram in an attempt to intimidate him from testifying would certainly be relevant to show Gordon's consciousness of guilt in the robbery case under Evid.R. 404(B). See State v. Tibbetts , 92 Ohio St.3d 146, 161, 749 N.E.2d 226 (2001). And only Baker would be in a position to testify that Gordon-and only Gordon-had been shown the interview video on Baker's computer the day before an edited version had shown up on Instagram. Because evidence of the attempted intimidation was admissible in the robbery case and Baker was a material witness in the intimidation case, he also was a material witness in the robbery case.
{¶ 29} Neither the trial court's joinder of the two cases nor its failure to sua sponte separate the two cases for trial pursuant to Crim.R. 14 constituted plain error. The trial court could reasonably have determined that Baker should be disqualified from both cases even without the joinder. There was thus no obvious defect in the trial proceedings that affected the outcome of the trial. The trial court's decision did not result in a "manifest miscarriage of justice," Long , 53 Ohio St.2d 91, 372 N.E.2d 804, at paragraph three of the syllabus.
CONCLUSION
{¶ 30} It is well settled that the law favors joinder. Gordon failed to object to the joinder of the robbery case and the intimidation case, and there was no plain error in joining the two cases. Accordingly, we reverse the judgment of the court of appeals. Because the court of appeals did not reach Gordon's remaining *536 assignments of error, we remand this cause to the court of appeals for consideration of those issues.
Judgment reversed and cause remanded.
O'Connor, C.J., and O'Donnell, Kennedy, French, and Fischer, JJ., concur.
O'Neill, J., dissents.